UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

APOGEE ENTERPRISES, INC.,

                           Plaintiff,

        -against-                              09 Civ. 1899 (RJH)

                                                          **MEMORANDUM OPINION AND ORDER**

STATE STREET BANK AND TRUST CO.,

                           Defendants.

---

The Apogee Enterprises 401(k) Retirement Plan (the "Plan") and its named fiduciaries bring this action to recover for losses caused by alleged misrepresentations about a State Street mutual fund, the Daily Bond Market Fund (the "Bond Fund"). The Plan lost approximately $5 million when the Bond Fund plummeted in value in 2007 amidst the subprime mortgage crisis. Plaintiffs have settled their dispute with the State Street entities that served as investment manager and trustee to the Plan. The only remaining defendant is CitiStreet LLC, which provided the Plan with recordkeeping and administrative services. Plaintiffs allege CitiStreet violated ERISA fiduciary duties by misrepresenting the Bond Fund as a safe, conservative investment and also by misinforming plaintiffs about the amount of time it would take to exit the Bond Fund once it began suffering losses. In addition to their ERISA claims, plaintiffs assert various claims under Minnesota state law. Now before the Court is CitiStreet's motion to dismiss.

The Court recently denied CitiStreet's motion to dismiss ERISA claims in a related case, *F.W. Webb v. State Street Bank and Trust Co.*, No. 09 Civ. 1241 (RJH), 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010).  Generally speaking, the two cases are similar: in both, CitiStreet was the administrative service provider for a retirement plan and allegedly made misrepresentations to the plan's named fiduciaries about the high-risk, mortgage-focused investment strategy of a State Street mutual fund (the Yield Plus Fund in *F.W. Webb*, and the Bond Fund here).  But certain details distinguish the cases.  In *F.W. Webb*, the Court found plaintiffs had adequately pleaded CitiStreet's status as an ERISA investment advice fiduciary by alleging that (1) CitiStreet met regularly with plaintiffs to discuss the plan's investment options, which discussions grew from a contractual arrangement whereby CitiStreet had to make a given investment option "available" to plaintiffs before they were allowed to select it for the plan's investment menu; and (2) plaintiffs did not receive investment advice from any other sources.  2010 WL 3219284, at *7–11.  In contrast, plaintiffs in this case do not argue that CitiStreet was an investment advice fiduciary.  And the allegations would not support the argument in any case: unlike in *F.W. Webb*, CitiStreet is not alleged to have had responsibility for making investment options available to plaintiffs; and, perhaps more importantly, plaintiffs concede they received investment advice from different entities retained for that specific purpose. (Compl. ¶¶ 70, 75.)  Plaintiffs would have difficulty making a plausible case that they reached a "mutual agreement, arrangement or understanding" for CitiStreet to render advice that would serve as a "primary basis for [the Plan's] investment decisions," where CitiStreet never contracted to provide such advice and where plaintiffs hired other advisors to do so.  29 C.F.R. § 2510.3-21(c)(1); *see F.W. Webb*, 2010 WL

3219284, at *7–8.  Consequently, plaintiffs base their argument that CitiStreet was an ERISA fiduciary on a different theory: that CitiStreet exercised discretionary authority or control over the Plan.  For reasons that follow, the Court finds this argument unavailing.  The ERISA claims against CitiStreet are therefore dismissed.  With regard to plaintiffs' state law claims, the Court finds that the Complaint adequately pleads two of the claims (the common law misrepresentation claims) but fails to plead two others (the Minnesota statutory claims).

> I.     CitiStreet was not an ERISA Fiduciary

As the Court explained in *F.W. Webb*, the threshold issue in an ERISA case is whether the defendant was a fiduciary.  CitiStreet cannot be liable for breaching fiduciary duties under ERISA if it did not owe any fiduciary duties under ERISA.[1]  *See F.W. Webb*, 2010 WL 3219284, at *4.  Here, plaintiffs argue primarily that CitiStreet was a fiduciary because it prepared "investment reports" for the Plan's Investment Committee.  According to the Complaint, these reports contained the following information: "rates of return for [plan investments] . . . asset listings [with] descriptions of all securities held in the portfolio . . . [and] strategy statements or prospectuses that describe the investment strategies currently in place."  (Compl. ¶ 33.)

Plaintiffs contend CitiStreet's role in compiling this information brings it within subsections (i) and (iii) of ERISA's functional fiduciary provision, which provide as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting

---

[1] Plaintiffs argue incorrectly that a non-fiduciary may be liable under ERISA for knowingly participating in a fiduciary's breach.  *See Gerosa v. Savasta & Co.*, 329 F.3d 317, 322 (2d Cir. 2003) (abrogating prior decisions recognizing a cause of action against non-fiduciaries).

> management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (2008).

CitiStreet was not a fiduciary under these provisions. A person only falls within subsections (i) and (iii) if they possess final authority to make decisions for the plan or if they have control over plan assets. *See, e.g., Hecker v. Deere & Co.,* 556 F.3d 575, 583-84 (7th Cir. 2009); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997). Responsibilities like compiling reports, providing advice, or offering recommendations do not satisfy this standard. 29 C.F.R. § 2509.75-8, D-2 ("[p]reparation of reports concerning participants' benefits" is not a fiduciary function); *Vengurlekar v. HSBC Bank USA*, No. 03 Civ. 243 (LTS), 2009 WL 362003, at *2–4 (S.D.N.Y. Feb. 11, 2009); *New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharmacy Solutions*, 235 F. Supp. 2d 123, 128 (N.D.N.Y. 2002).[2] Therefore, CitiStreet did not become a fiduciary by virtue of its investment reporting function.

Plaintiffs make two other fiduciary status arguments that require only brief discussion. First, they argue CitiStreet became a fiduciary by "actively assuming the duty to communicate with Plan participants." (Pl. Mem. at 10 (quoting *Woods v. So. Co.*, 396 F. Supp. 2d 1351, 1375 (N.D. Ga. 2005)).) The Complaint does not support this theory. Though CitiStreet is alleged to have provided reports to the Investment Committee, the Complaint does not allege CitiStreet communicated with Plan

---

[2] Plaintiffs cite the Supreme Court's decision in *Varity* to support its argument that CitiStreet was a fiduciary because it "convey[ed] information about the likely future of plan benefits" in the investment reports. (Pl. Mem. at 10 (*quoting Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996)).) But *Varity* simply held that the plaintiffs' employer—an undisputed fiduciary as administrator of the pension plan—acted in its fiduciary capacity when it lied to employees about the solvency of an affiliate corporation in an effort to persuade the employees to transfer to the affiliate. *Varity Corp.*, 516 U.S. at 503. The case does not support the argument that a service provider exercises any discretionary authority or control by reporting on the performance of plan investments.

4

participants directly.  Second, plaintiffs argue CitiStreet became a fiduciary the moment it misrepresented the amount of time required to exit the Bond Fund (CitiStreet told plaintiffs it would take 60 to 90 days, while in reality, according to the Complaint, plans were permitted to exit within 48 hours).  Plaintiffs contend CitiStreet exerted "control" over Plan assets through this misrepresentation because the misrepresentation had the effect of dissuading plaintiffs from moving assets from the Bond Fund.  The argument is both creative and backwards.  Making a harmful misrepresentation to a plan does not spawn a simultaneous fiduciary duty under ERISA to not make misrepresentations; otherwise anyone who swindled a plan through false advertising or a dishonest sales pitch would be a fiduciary.  The statute does not go that far.  Rather, a fiduciary duty can only arise from one of the independent criteria enumerated in the statute.  *See* 29 U.S.C. § 1002(21)(A).  The Complaint does not satisfy any of these criteria with respect to CitiStreet: though plaintiffs allege CitiStreet's misstatement influenced the Investment Committee and affected the disposition of Plan assets, the allegations make clear that only the Investment Committee itself had ultimate authority over the assets.  (Compl. ¶¶ 81-86.)  Therefore, CitiStreet did not exercise the requisite control over plan assets.  *See Hecker,* 556 F.3d at 583-84.

Because the Complaint does not plausibly allege CitiStreet was an ERISA fiduciary, Counts One and Two of the Complaint are dismissed.

> II.     The State Law Claims Are Not Preempted

Apogee also asserts four claims under Minnesota law, all of which are based on the same theory as the ERISA claims: that CitiStreet harmed the Plan by misrepresenting the Bond Fund's investment strategy and the amount of time it would take to exit the

Bond Fund.  CitiStreet argues that ERISA's express preemption provision preempts these claims.  *See* 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . .").

Plaintiffs' state law claims implicate a relationship that ERISA does not govern—that between the Plan and CitiStreet, a non-fiduciary recordkeeper.  As such, ERISA does not preempt the claims because they do not interfere with the statute's regulatory scheme.  *Gerosa*, 329 F.3d at 324 ("[C]ourts routinely find that garden-variety state-law malpractice or negligence claims against non-fiduciary plan advisors, such as accountants, attorneys, and consultants, are not preempted."); *Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 571 (E.D.N.Y. 1998) ("[Because defendants] are not ERISA fiduciaries . . . allowing the plaintiffs to proceed with their common law claims will not encroach upon the regulatory scheme established by ERISA.").

Defendant argues that claims against non-fiduciaries are nonetheless preempted if they are "premised on the very existence of [an ERISA] plan."  (Def. Reply at 7 (quoting *De Pace v. Matsushita Electric Corp. of America*, 257 F. Supp. 2d 543, 569 (E.D.N.Y. 2003)).)  But the cases defendant relies upon for this proposition—*De Pace* and the decisions cited therein—involved claims against fiduciaries, not non-fiduciaries like CitiStreet.  Moreover, even putting aside the fiduciary/non-fiduciary distinction, the doctrine concerning preemption of claims "premised on the existence" of a plan does not apply here.  Under this doctrine, a state law claim is preempted if it requires the plaintiff to prove the existence of an ERISA plan in order to prevail.  *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir.1994).  Put differently, preemption applies if "there would be no cause of action if there were no plan."  *De Pace*, 257 F. Supp. 2d at 569.  This

6

principle typically comes into play in cases where an employer misrepresents pension benefits to an employee.  In *De Pace*, for example, the defendant employer misled employees about the pension benefits they would receive if they resigned voluntarily.  *Id.* at 546-47.  Similarly, in *Smith v. Dunham-Bush, Inc.*, a Second Circuit case cited in *De Pace*, the plaintiff's employer had made misstatements dealing "expressly and exclusively with the [employee's] benefits."  *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 7 (2d Cir. 1992).  Claims based on such misrepresentations about benefits require the plaintiff to prove that (1) she was entitled to benefits under a plan; and (2) the employer misrepresented the benefits to which she was entitled.  *De Pace*, 257 F. Supp. 2d at 570.  In contrast, here CitiStreet is not alleged to have made misrepresentations about benefits due to individuals under a retirement plan, but rather about a mutual fund in which the Plan happened to invest (the Bond Fund).  The existence of a pension plan does not inhere in this claim: the same misrepresentations could have harmed any investor, whether retirement plan or not.  Accordingly, the line of precedent discussed in *De Pace* is inapposite.  Plaintiffs' state law claims against a non-fiduciary for misrepresentations about a mutual fund are not preempted.  *See Local 875 I.B.T. Pension Fund*, 992 F. Supp. at 571.

   III.  <u>Merits of the State Law Claims</u>

CitiStreet also moves to dismiss each of Apogee's state law claims for failure to state a claim on the merits.  The four claims are (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) violation of Minn. Stat. 325F.69, Minnesota's Consumer Fraud Act (the "CFA"); and (4) violation of Minn. Stat. 325F.67, Minnesota's False Statement in Advertisement Act (the "FSAA").  Plaintiffs do not dispute that the

heightened pleading requirements of Federal Rule of Civil Procedure apply to all of these claims, which sound in allegations that CitiStreet fraudulently misrepresented information about the Bond Fund.  *See Rombach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004) ("Rule 9(b) applies when the claim sounds in fraud."); *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) ("Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity.").  To satisfy Rule 9(b)'s pleading requirements, the Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

### A.  The Complaint Properly States Misrepresentation Claims

CitiStreet argues the misrepresentation claims should be dismissed because the Complaint does not identify any false statements with sufficient particularity.  With respect to the fraudulent misrepresentation claim, CitiStreet also argues the Complaint does not plead scienter.  Neither argument is persuasive.

#### i.  False Statement

To prevail on a claim of fraudulent misrepresentation or negligent misrepresentation under Minnesota law, a plaintiff must prove that the defendant made a false statement.  *Trooien*, 608 F.3d at 1028.[3]  Here, many of the false statement

---

[3] A claim for fraudulent misrepresentation under Minnesota law has five elements: "(1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance."  *Id.* (quoting *Hoyt Props., Inc. v. Prod. Res. Group, LLC*, 736 N.W.2d 313, 318 (Minn. 2007).)  The elements of a negligent misrepresentation claim are the same, except with

allegations are too vague and conclusory to satisfy Rule 9(b), (*see. e.g.,* Compl. ¶ 47), but the Complaint does adequately allege that CitiStreet misrepresented the amount of time it would take the Plan to exit the Bond Fund. Specifically, the Complaint describes a telephone conversation in which a CitiStreet employee told Plan representatives that it would take 60 to 90 days to exit the Fund. (Compl. ¶¶ 81.) That statement, according to the allegations, was false. In another conversation three weeks later about the same issue, the same CitiStreet employee equivocated—first he repeated his statement that it would take 60 to 90 days to exit, but then he revealed that other plans were permitted to leave the Bond Fund on 48 hours' notice. (Compl. ¶¶ 91.) And, according to the Complaint, the Bond Fund's assets under management dropped precipitously between these two conversations, in part because so many other plans had taken advantage of the opportunity to leave the fund on two days' notice. (Compl. ¶¶ 93-94.) On these allegations, the Complaint adequately pleads that the "60 to 90 days" statement was false.

        ii.  Scienter

CitiStreet argues the fraudulent misrepresentation claim should be dismissed because the Complaint does not adequately plead scienter. A plaintiff may satisfy the pleading requirements of Rule 9(b) with respect to scienter by alleging facts showing "strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290-91. To meet the recklessness prong of this test, the complaint must demonstrate that the defendant had "access to information contradicting [its] statements," such that the defendant "should have known that [it was] misrepresenting material facts." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (quotations omitted). Here, the

---

respect to the state of mind requirement: a plaintiff need only prove that the defendant "fail[ed] to exercise reasonable care or competence." *Id*.

9

Complaint clears this hurdle.  Plaintiffs have alleged CitiStreet informed plaintiffs that they would have to wait 60 to 90 days to get out of the Bond Fund while, at the same time, other plans were in fact leaving the Bond Fund in droves on far shorter notice. (Compl. ¶¶ 80-85, 90-97.)  Perhaps CitiStreet did not actually realize that plans were being permitted to exit within 48 hours, but the Complaint at least alleges that it should have, especially given the allegations showing that CitiStreet closely monitored, and enjoyed extensive access to information about, the State Street funds and the Bond Fund in particular.  (Compl. ¶¶ 40-42, 80.)

> B.  <u>The Complaint Fails to State a Claim Under the Minnesota Consumer Fraud Act ("CFA")</u>

The CFA applies to misrepresentations made "in connection with the sale of . . . merchandise."  Minn. Stat. 325F.69, subd. 1.  Here, the Complaint does not allege that CitiStreet made any such misrepresentations.  The statute defines "sale" as "any sale, offer for sale, or attempt to sell any merchandise for any consideration."  Minn. Stat. 325F.68, subd. 4.  Plaintiffs appear to be correct in their assertion that shares in the Bond Fund qualify as "merchandise" under the statute, *see Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 728 (Minn. 1983), *superseded on other grounds*, Minn. R. Prof. Conduct 1.10(b), but the Complaint does not allege that CitiStreet made misrepresentations in an effort to induce plaintiffs to purchase shares.  The Complaint does not even allege that CitiStreet had any financial interest in the Bond Fund.  CitiStreet was responsible for reporting to plaintiffs about the Bond Fund's performance, (Compl. ¶ 39), but nothing indicates that CitiStreet offered such reports (which it was paid to provide) to generate sales.  Accordingly, the CFA claim is dismissed.  *See Flora v. Firepond, Inc.*, 260 F.

Supp. 2d 780, 787 (D. Minn. 2003) (dismissing CFA claims where only a tenuous nexus existed between defendant's alleged fraud and the sale of merchandise); *Group Health Plan, Inc. v. Phillip Morris, Inc.*, 68 F. Supp. 2d 1064, 1069 (D. Minn. 1999) (CFA claim dismissed where complaint contained "no allegations that Defendants were attempting to sell their products" while making the alleged misstatements).

### C. The Complaint Fails To State a Claim Under the Minnesota False Statement in Advertisement Act ("FSAA")

The FSAA proscribes false and misleading statements in advertisements. Minn. Stat. 325F.67; *Group Health Plan, Inc.*, 68 F. Supp. 2d at 1070. Plaintiffs' claim under this statute fails because the Complaint does not specifically identify any false advertisement by CitiStreet. In their opposition brief, plaintiffs rely on evidence produced in discovery suggesting that CitiStreet distributed false fact sheets about the Bond Fund, but plaintiffs do not point to any paragraph in the Complaint that makes a similar allegation with the required specificity. (Pl. Mem. at 24-25.) On this motion to dismiss, the sufficiency of plaintiffs' claims turns on the sufficiency of the pleadings, not on information revealed in discovery. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). Because the Complaint does not actually specify a false statement in an advertisement produced or distributed by CitiStreet, the FSAA claim is dismissed. *See ADT Sec. Services, Inc. v. Swenson*, 2008 WL 2828867, at *7 (D. Minn. 2008) (dismissing FSAA claims where complaint did not specify "which advertisements allegedly contained false representations").

## CONCLUSION

For the reasons stated, CitiStreet's motion to dismiss [26] is granted in part and denied in part. The ERISA claims (Counts One and Two) and the Minnesota statutory claims (Counts Six and Seven) are dismissed. With respect to the Minnesota common law claims (Counts Four and Five), the motion is denied.

SO ORDERED.

Dated: New York, New York
       September 17, 2010

*[signature]*

Richard J. Holwell
United States District Judge

12